UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                      MASTER FILE NO. 12-md-02311

_____

In Re: Heater Control Panels              HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

Dealership Actions                        2:12-cv-00402
End-Payor Actions                         2:12-cv-00403

_____/

**OPINION AND ORDER DENYING ALPS ELECTRIC NORTH AMERICA, INC. AND ALPS AUTOMOTIVE INC.'S MOTION TO DISMISS THE END-PAYORS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND THE <u>AUTOMOBILE DEALERSHIPS' CONSOLIDATED CLASS ACTION</u>**

Before the Court is Alps Electric North America, Inc. and Alps Automotive Inc.'s (collectively "Alps Defendants") Motion to Dismiss the End-Payors Consolidated Amended Class Action Complaint and the Automobile Dealerships' Consolidated Class Action (Doc. Nos. 94 and 95 in 12-402; Doc, No. 57 and 58 in 12-403).  Automobile Dealer Plaintiffs and End-Payor Plaintiffs (collectively "Indirect Purchaser Plaintiffs" or "IPPs") bring class actions against Defendants under federal and state law based on Defendants' alleged conspiracy to rig bids, fix prices, and allocate the market for Heater

Control Panels ("HCPs"). The Court heard oral argument on November 13, 2013, and at the conclusion of the hearing, took this matter under advisement.

## I. INTRODUCTION

On February 7, 2012, the United States Judicial Panel on Multidistrict Litigation ("Judicial Panel" or "Panel") transferred actions sharing "factual questions arising out of an alleged conspiracy to inflate, fix, raise, maintain, or artificially stabilize prices of automotive wire harness systems" to the Eastern District of Michigan. (12-md-02311, Doc. No. 2). In its transfer order, the Judicial Panel noted that the majority of cases were pending in the Eastern District, as was the first filed action, that several defendants were located in this district, and that a related criminal investigation was underway in this district. (Id.) The Panel determined that centralizing litigation in this District would eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve resources. (Id.) After complaints were filed alleging conspiracies to fix the prices of three additional component parts, the Judicial Panel determined that including all actions in MDL No. 2311 would result in the most efficient handling of the case. The Judicial Panel noted the existence of similar conspiracies with overlapping defendants arising from the same government investigation as well as an overlap of parties and counsel. The additional component part cases were transferred to this Court for coordinated pretrial proceedings, and In re: Automotive Wire Harness Systems Antitrust Litigation was renamed In re: Automotive Parts Antitrust Litigation. (Doc. No. 117 in 12-2311). There are now twenty-nine component part cases pending.

On February 28, 2013, Automobile Dealer Purchaser Plaintiffs filed their Consolidated Class Complaint (Doc. No. 37, Ex. 1 (redacted) in 12-402, Doc. No. 38

(sealed)), and End-Payor Plaintiffs filed their Consolidated Amended Class Action Complaint (Doc. Nos. 35 in 12-403 (sealed) and 36 (redacted)). Alps Defendants assert that the Indirect Purchaser Plaintiffs' complaints fail to meet the minimum requirements for pleading an antitrust conspiracy and that they lack standing to bring antitrust claims. In addition to the arguments advanced in this motion, Alps Defendants filed a collective motion, seeking dismissal of IPPs' complaints, which also raised the sufficiency of the allegations and standing as grounds for dismissal. The arguments in this motion include facts specific to Alps Defendants.

## I. FACTS

Both Automobile Dealer Plaintiffs and End-Payor Plaintiffs bring their actions under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). Alps Electric Co. Ltd., a Japanese company, manufactured, marketed and/or sold Heater Control Panels ("HCPs") directly or through its subsidiaries, Alps Defendants, in the United States during the Class Period. (Doc. No. 37 at ¶ 118). Heater Control Panels "control the temperature of the interior environment of a vehicle." (Doc. No. 37 at ¶¶ 3, 4; Doc. No. 36 at ¶ 3).

Indirect Purchaser Plaintiffs identify several groups of Defendants, including Denso Corporation and Denso International America, Inc., Sumitomo Electric Industries, Ltd., Sumitomo Electric Wintec America, Inc., Sumitomo Wiring Systems Ltd., Sumitomo Electric Wiring Systems, Inc., Tokai Rika, Co. Ltd, TRAM, Inc., and Alps Defendants.

Defendant Alps Automotive, Inc. merged into Defendant Alps Electric North America on April 1, 2010.  According to the complaints, "executives who worked for Alps Electric Co. Ltd. in Japan also worked for Alps Electric North America, Inc. and Alps Automotive, Inc. in the United States.  (Doc. No. 37 at ¶ 121).  The Alps entities are accessible from one website, and the two United States entities are referred to as "Locations."  (Doc. No. 37 at ¶ 124).  No distinction is made between the subsidiaries, and one financial report is filed.  (Id.)  According to End-Payor Plaintiffs, not only did the subsidiaries share executives with the parent, the parent exerted control over the subsidiaries' practices, policies, sales and finances.  (Doc. No. 36 at ¶¶ 122-24).  IPPs claim that Defendants colluded to allocate business by participating in a bidding process wherein the winning bid was decided by Defendants in advance.

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint when it fails "to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'"  Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere

4

conclusory statements, do not suffice."). Under Iqbal, a civil complaint will only survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. . . . Exactly how implausible is 'implausible' remains to be seen, as such a malleable standard will have to be worked out in practice." Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629-630 (6th Cir. 2009).

## IV. ANALYSIS

In their motion to dismiss, Defendants challenge whether the pleadings sufficiently allege a conspiracy in the absence of any consideration to Alps Defendants. According to Defendants, the complaints boil down to guilt by association because IPPs do not allege that Alps Defendants sold to the one Original Equipment Manufacturer ("OEM") identified specifically as the target of the rigged bids set forth in the complaints. At oral argument, counsel for Alps Defendants conceded that the pleadings might be sufficient had the IPPs not already received discovery. (Tr. at 136-37). Here, despite the availability of the information provided through discovery, IPPs have not pleaded that Alps Defendants sold to the identified OEM, that the conduct directed at that OEM could have affected the prices of HCPs sold to other OEMs, or that Alps Defendants had any economic incentive to join the conspiracy.

In their complaints, IPPs set forth a specific example of rigged bids, allegedly involving Alps Defendants and its co-conspirators. According to IPPs, during the Class Period, Alps Automotive Inc., on behalf of itself and its parent, submitted responses to an Original Equipment Manufacturer's Requests for Quotations. IPPs allege specific overt acts committed by Alps Defendants and its co-conspirators. In addition to the

5

allegations regarding Defendants that pleaded guilty, IPPs include specific examples of Alps Defendants' collusion in responding to Requests for Quotations ("RFQ") for particular car models. (Doc. No. 37 at ¶¶ 145-151; Doc. No. 36 ¶¶ at 113-118). IPPs' complaints include specific, illustrative examples of Defendants' anticompetitive conduct. (Doc. No. 37 at ¶¶ 154-158; Doc. No. 36 at ¶¶ 139-144). In these examples, each Defendant family is alleged to have coordinated at least one RFQ submitted for the purpose of becoming the supplier of HCPs for that particular car model. Id. The illustrative examples included in both complaints detail the mechanics of the collusive bidding, as well as which entity ultimately won. Id. IPPs also specify the time frame involved in the collusive bid. (Doc. No. 37 at ¶ 144; Doc. No. 36 at ¶ 141).

In addition to Defendants' specific conduct, IPPs include allegations about the market conditions conducive to an antitrust conspiracy and allegations about each Defendants' main customers. (Doc. No. 37 at ¶¶ 133-136; Doc. No. 36 at ¶¶ 93-96). IPPs allege that they were injured because some portion of an overcharge resulting from the conspiracy was passed through the distribution chain to them. They claim that the decreasing material and labor costs should have resulted in lower prices "because each competitor would be afraid that other competitors would attempt to take advantage of their lower cost to lower their prices in order to capture market share." (Doc. No. 36 at ¶ 98). Instead the price of HCPs increased during the class period despite stable input costs. (Doc. No. 36 at ¶ 100). According to EPPs, "[i]n a competitive market, steady input costs should not have resulted in rising prices for HCPs. . . ." (Id.)

Indirect Purchaser Plaintiffs include allegations describing the structure of the

HCP market and those factors that render the market conducive to price-fixing, including a highly concentrated market, high barriers to entry, and inelasticity of demand for HCPs. (Doc. No. 37 at ¶¶ 139-145; Doc. No. 36 at ¶¶ 101, 102-108). IPPs allege that Defendants dominate the HCP market, (Doc. No. 36 at ¶ 109), and had ample opportunities to conspire at industry events under the guise of legitimate business. (Doc. No. 36 at ¶ 110).

Subsequent to a wide-ranging investigation by governmental authorities into a conspiracy involving automotive parts, two of Alps Defendants' alleged co-conspirators pleaded guilty to participating in a conspiracy to fix prices and rig bids of HCPs. (Doc. No.37 at ¶¶ 7-10, 166-173; Doc. No. 36 at ¶¶ 6-10). See Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc., 648 F.3d 452, 454-55 (6th Cir. 2011) (observing that when "a complaint specifically alleges an express agreement to restrain trade and conduct by defendants consistent with the agreement, a defendant cannot prevail at the pleading stage by offering alternative explanations for the allegedly unlawful behavior"). Many of the companies subject to the widespread investigation pleaded guilty to bid-rigging, price-fixing, and market allocation of automotive parts targeting multiple OEMS during this same time frame. (Doc. No. 37 at ¶ 174). That conduct is relevant to support the existence of the HCP conspiracy beyond the two Defendants that pleaded guilty and beyond the sole OEM they identified. For example, in In re Flash Memory Antitrust Litig., 643 F. Supp. 2d 1133, 1149 (N.D. Cal. 2009), the court addressed how an earlier conspiracy might create an inference strengthening the existence of a latter conspiracy:

> In United States v. Andreas, 216 F.3d 645 (7th Cir. 2000), the court

>recognized that evidence concerning a prior conspiracy may be relevant
>and admissible to show the background and development of a current
>conspiracy. In Andreas, the court addressed a claim that there was a
>conspiracy to fix prices and control the output of Lysine, an amino acid.
>On appeal, the court rejected defendants challenge to the admissibility of
>evidence concerning a similar scheme involving the related market for
>citric acid. The court found that there was evidence that the citric acid
>scheme 'provided the blueprint for and motivating force behind the
>nascent lysine scheme,' and thus, was admissible to provide context as to
>how the lysine conspiracy operated. Id. at 665; see also High Fructose,
>295 F.3d at 661 (same).

Id.; In re Static Random Access Memory (SRAM) Antitrust Litig., 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008) (recognizing that guilty pleas in the earlier litigation did not support the existence of the second conspiracy on their own, but finding the guilty pleas did "support an inference of a conspiracy in the related industry").

The Court finds that the complaints satisfactorily allege an express agreement existed to fix prices and allocate customers in a market with conditions ripe for conspiratorial conduct, and that Alps Defendants were part of the conspiracy. The factual allegations create "a reasonable expectation that discovery will reveal evidence of illegal agreement" beyond those parties that have pleaded guilty and beyond the extent admitted by some Defendants. Twombly, 550 U.S. at 556. Accord In re Polyurethane Foam Antitrust Litig., 799 F. Supp. 2d 777, 782 (N.D. Ohio 2011) (relying on "specific admissions" made during a governmental investigation that supported the "existence of a conspiratorial agreement" as opposed to government investigations coupled with parallel conduct). The number of Original Equipment Manufacturers identified as targets in the guilty pleas does not act as a limit on the scope of the conspiracy, particularly before discovery. IPPs allege that Defendants supplied other OEMs. Although it is not clear what consideration Alps Defendants received, the

complaints, read in their entirety, advance a plausible conspiracy claim. Accordingly, the Court denies Alps Defendants' request to dismiss the complaints based upon the sufficiency of the allegations and considers Defendants' argument that constitutional standing is lacking.

Alps Defendants argue that IPPs lack standing to assert an antitrust claim because ADPs and EPPs, as indirect purchasers, must include two allegations: (1) Defendants overcharged the direct purchasers; and (2) some or all of the overcharge was passed on to them through each of the various intermediate levels of the distribution chain. See In re Graphics Processing Units Antitrust Litig., 253 F.R.D. 478, 502 (N.D. Cal. 2008) ("In re GPU") (observing that "indirect purchasers must prove that an overcharge was levied on direct purchaser of the defendants' products, who then passed all or some of that overcharge through to the indirect purchasers"); D.R. Ward Constr., Co. v. Rohm & Haas Co., 470 F. Supp. 2d 485, 492-93 (E.D. Pa. 2006) (finding that the plaintiffs' allegations "that they paid inflated prices for products with plastics additives due to an overcharge on plastics additives which was passed on to them from the intervening links within the distribution chain, that plaintiffs' overpayment for products containing plastics additives was caused by the conspiracy among defendants to charge inflated prices for plastics additives, and that judicial relief will compensate plaintiffs for these injuries, restoring plaintiffs to the position they were in prior to the price-fixing scheme" satisfied standing).

To demonstrate Article III standing, a plaintiff must first allege that he has suffered an injury that is (a) concrete and particularized and (b) actual or imminent, rather than conjectural or hypothetical. Lujan v. Defenders of Wildlife, 504 U.S. 555,

9

560 (1992). Second, the alleged injury must be fairly traceable to the defendant's conduct, and not the result of the independent action of a third party. Id. Third, the plaintiff must allege that a favorable federal court decision is likely to redress the alleged injury. Id. at 561.

According to Alps Defendants, IPPs cannot show injury because Alps Defendants did not sell to the OEM targeted by the conspiracy, so Alps Defendants did not participate in the HCP market as applied to the target.

Although IPPs pleaded an example of bid-rigging and price-fixing specific to the identified OEM, the allegations of the antitrust conspiracy advanced in IPPs' complaints are not limited to that target. IPPs allege that the antitrust conspiracy involved other OEMs. IPPs identify Defendants' other customers, including those customers that also are customers of Alps Defendants. The conspiracy involved a ten-year period. Although IPPs did not provide examples of Defendants' conduct specific to other OEMs, the allegations are not limited to the specific example of antitrust bid-rigging set forth in the complaints. Moreover, although IPPs have received some discovery, there has been no discovery from Alps Defendants.

To the extent that Alps Defendants argue that IPPs must allege more than an injury-in-fact to meet standing requirements, the Court agrees. In its decision in Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 535 (1983) ("AGC"), the Supreme Court articulated a number of factors that courts should consider in analyzing the relationship between a plaintiff's harm and a defendant's wrongdoing: (1) the causal connection between the violation and the harm, and whether the harm was intended; (2) the nature of injury and whether it was one

Congress sought to redress; (3) the directness of the injury, and whether damages are speculative; (4) the risk of duplicate recovery or complexity of apportioning damage; and (5) the existence of more direct victims.  AGC, 459 U.S. at 537-45.  A plaintiff need not prevail on every factor; instead, the courts balance the factors, "giving great weight to the nature of the plaintiff's alleged injury."  Id.

The Court addresses this argument at length in the Defendants' collective motion, and declines to repeat the analysis here.  To the extent that Alps Defendants build their argument on their position that standing is lacking because they did not supply the target identified in the guilty pleas, the Court finds it unavailing.  IPPs' complaints allege conduct beyond that target, and the Court declines to limit the complaints to the specific example of bid-rigging set forth in the complaints.

## IV. CONCLUSION

For the reasons stated, this Court **DENIES** Alps Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

Date:  July 3, 2014              s/Marianne O. Battani
                                              MARIANNE O. BATTANI
                                              United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 3, 2014.

                                              s/ Kay Doaks
                                              Case Manager