# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| In re: Wire Harness<br>In re: Heater Control Panels | Hon. Marianne O. Battani |
| THIS DOCUMENT APPLIES TO:<br><br>Auto Dealer Actions | 12-cv-00102-MOB-MKM<br>12-cv-00402-MOB-MKM |

### SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this 15th day of September, 2015 ("Execution Date") by and between Sumitomo Electric Industries, Ltd. ("SEI"), Sumitomo Wiring Systems, Ltd., Sumitomo Electric Wiring Systems, Inc. (incorporating K&S Wiring Systems, Inc.), Sumitomo Wiring Systems (U.S.A.) Inc., (collectively, "Sumitomo"), and Dealership Plaintiff Class Representatives ("Dealership Plaintiffs"), both individually and on behalf of a class of Dealership indirect purchasers of Automotive Wire Harness Systems and Heater Control Panels ("HCPs") (the "Settlement Classes"), as more particularly defined in Paragraph 11 below.

WHEREAS, Dealership Plaintiffs are prosecuting the above *In Re Automotive Parts Antitrust Litigation,* Master File No. 12-md-02311 (E.D. Mich.) (the "MDL Litigation"), Case No. 12-cv-00102 (the "Wire Harness Action") and Case No. 12-cv-00402 (the "HCP Action") (collectively, the "Actions") on their own behalf and on behalf of the Settlement Classes against, among others, Sumitomo;

WHEREAS, Dealership Plaintiffs allege that (1) they were injured as a result of Sumitomo's participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, allocate markets and customers for Automotive Wire Harness Systems (as defined below) in violation of Section 1 of the Sherman Act and various state antitrust, unfair competition, unjust enrichment, and consumer protection laws as set forth in Dealership Third Consolidated Class Action Complaint in the Wire Harness Action (the "Wire Harness Complaint"); (2) they were injured as a result of Sumitomo's participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, allocate markets and customers for HCPs (as defined below) in violation of Section 1 of the Sherman Act and various state antitrust, unfair competition, unjust enrichment, and consumer protection laws as set forth in Dealership Second Consolidated Class Action Complaint in the HCP Action (together with the Wire Harness Complaint, the "Complaints").

WHEREAS, Sumitomo denies Dealership Plaintiffs' allegations and has asserted defenses to Dealership Plaintiffs' claims in the Actions;

WHEREAS, arm's-length settlement negotiations have taken place between Settlement Class Counsel (as defined below) and counsel for Sumitomo and this Agreement has been reached as a result of those negotiations;

WHEREAS, Dealership Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding the Actions and have concluded that resolving the claims against Sumitomo, according to the terms set forth below, is in the best interest of Dealership Plaintiffs and the Settlement Classes because of the payment of the Settlement Amount and the value of the Injunctive Relief and Cooperation (as those terms are defined below) that Sumitomo has agreed to provide pursuant to this Agreement;

2

WHEREAS, the Actions will continue against Defendants (as defined below) that are not Releasees (as defined below);

WHEREAS, Sumitomo, despite its belief that it is not liable for the claims asserted and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Sumitomo with respect to Automotive Wire Harness Systems and/or HCPs based on the allegations in the Actions, as more particularly set out below;

WHEREAS, Sumitomo has provided Cooperation to Dealership Plaintiffs throughout the Actions pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA") and Sumitomo has agreed to continue providing Cooperation to Dealership Plaintiffs in the ongoing prosecution of the Actions as set forth in this Agreement, and such Cooperation has reduced, and will continue to reduce, Dealership Plaintiffs' substantial burden and expense associated with prosecuting the Actions; and

WHEREAS, Dealership Plaintiffs recognize the benefits of Sumitomo's Cooperation and recognize that because of joint and several liability, this Agreement with Sumitomo does not impair Dealership Plaintiffs' ability to collect the full amount of damages to which they and the Settlement Classes may be entitled in the Actions, including any damages attributable to Sumitomo's alleged conduct:

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Actions be settled, compromised, and dismissed on the merits with

3

prejudice as to the Releasees and except as hereinafter provided, without costs as to Dealership Plaintiffs, the Settlement Classes, or Sumitomo, subject to the approval of the Court, on the following terms and conditions:

A.    Definitions.

1.    "Cooperation" shall refer to those provisions set forth below in Paragraphs 32-38.

2.    "Cooperation Materials" means any information, testimony, Documents (as defined below) or other material provided by Sumitomo under the terms of this Agreement.

3.    "Defendant" means any party named as a defendant in the Actions at any time up to and including the date when the Court has entered a final order certifying the Settlement Classes described in Paragraph 11 and approving this Agreement under Federal Rule of Civil Procedure 23(e).

4.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation, electronically stored information.  A draft or non-identical copy is a separate document within the meaning of this term.

5.    "Dealership Plaintiff Class Representatives" means those Settlement Class Members, as defined in Paragraph 13, below, who are named plaintiffs in the Complaints.

6.    "Indirect Purchaser States" means Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

4

7.     For purposes of this Agreement, "Automotive Wire Harness Systems" and "HCPs" shall have the same meaning as set forth in the operative Complaint for each Action at the time this Agreement is executed.

8.     "Opt-Out Deadline" means the deadline set by the Court for the timely submission of requests by Settlement Class Members to be excluded from the Settlement Classes.

9.     "Releasees" shall refer to Sumitomo and to all of its respective past and present, direct and indirect, parents, subsidiaries, and affiliates, including but not limited to the predecessors, successors and assigns of each of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing. "Releasees" does not include any defendant in the MDL Litigation other than Sumitomo.

10.    "Releasors" shall refer to Dealership Plaintiff Class Representatives and the members of the Settlement Classes, as defined in Paragraph 11, below, and to their past and present officers, directors, supervisors, employees, agents, stockholders, members, attorneys, servants, representatives, parents, subsidiaries, affiliates, principals, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executors, administrators and assigns of any of the foregoing.

11.    For purposes of this Agreement, the "Settlement Classes" shall refer to Wire Harness Settlement Class and HCP Settlement Class, both of which are defined as below:

(a) "Wire Harness Settlement Class" is defined as:

5

All automobile dealers from January 1, 1999, through the Execution Date that purchased a new vehicle in the United States, which included one or more Automotive Wire Harness System(s) as a component part, or indirectly purchased one or more Automotive Wire Harness System(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirators of the Defendants.

(b) "HCP Settlement Class" is defined as:

All automobile dealers from January 1, 1999, through the Execution Date that purchased a new vehicle in the United States, which included one or more HCP(s) as a component part, or indirectly purchased one or more HCP(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirators of the Defendants.

12.    "Settlement Class Counsel" shall refer to the law firms of:

Barrett Law Group, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095

Cuneo Gilbert & LaDuca, LLP
507 C Street, N.E.
Washington, DC 20002

Larson King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101

13.    "Settlement Class Member" means each member of the Settlement Classes who has not timely elected to be excluded from the Settlement Classes.

14.    "Settlement Amount" shall be US $12,000,000. Settlement Class Counsel shall allocate the Settlement Amount between the Wire Harness Systems Settlement Class and the HCP Settlement Class subject to approval by the Court after notice to the Settlement Classes as directed by the Court. The "Settlement Funds" shall be the Settlement Amount allocated

6

between the Wire Harness Systems Settlement Class and the HCP Settlement Class plus any income or accrued interest earned on that amount.

B.    Approval of this Agreement and Dismissal of Claims Against Sumitomo.

15.    Dealership Plaintiffs and Sumitomo shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete, and final dismissal with prejudice of the Actions as to the Releasees only.

16.    Within fifteen (15) days after the effective date of this Agreement, Dealership Plaintiffs shall in each of the Actions submit to the Court a motion seeking preliminary approval of this Agreement (the "Motions"). The Motions shall include (i) the proposed form of an order preliminarily approving this Agreement, and (ii) a proposed form of order and final judgment that shall include at least the terms set forth in Paragraph 18 below. The text of these proposed orders shall be agreed upon by Dealership Plaintiffs and Sumitomo before submission of the Motions.

17.    After notice to Sumitomo, Dealership Plaintiffs shall, at a time to be decided in their sole discretion, in each Action submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all members of the Settlement Classes identified by Dealership Plaintiffs (the "Notice Motion"). In order to mitigate the costs of notice, the Dealership Plaintiffs shall endeavor, if practicable, to disseminate notice with any other settlements that have been or are reached in the MDL Litigation at the time the Notice Motion is filed. The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice in each of the Actions, which shall be

7

subject to good faith efforts to agree by the Dealership Plaintiffs and Sumitomo before submission of the Notice Motion.

18.     Dealership Plaintiffs shall seek, and Sumitomo will not object unreasonably to, the entry of an order and final judgment in each of the Actions, the text of which Dealership Plaintiffs and Sumitomo shall agree upon. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

(a)     certifying the Settlement Classes described in Paragraph 11, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class for each of the Actions;

(b)     as to the Actions, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(c)     as to Sumitomo, directing that the Actions be dismissed with prejudice and, except as provided for in this Agreement, without costs;

(d)     reserving exclusive jurisdiction over the settlement and this Agreement, including the interpretation, administration and consummation of this settlement, as well as over Sumitomo, for the duration of its provision of Cooperation pursuant to this Agreement, to the United States District Court for the Eastern District of Michigan;

(e)     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in each Action as to Sumitomo shall be final; and

8

      (f)     providing that (i) the Court's certification of the Settlement Classes is without prejudice to, or waiver of, the rights of any Defendant, including Sumitomo, to contest certification of any other class proposed in the MDL Litigation, (ii) the Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in the MDL Litigation or on the Court's rulings concerning any Defendant's motion; and (iii) no party may cite or refer to the Court's approval of the Settlement Classes as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

      19.     This Agreement shall become final when (i) the Court has entered in each of the Actions a final order certifying the Settlement Classes described in Paragraph 11 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and has entered a final judgment in each of the Actions dismissing the Actions with prejudice as to Sumitomo and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to Sumitomo described in (i) hereof has expired in each of the Actions or, if appealed, approval of this Agreement and the final judgment in each of the Actions as to Sumitomo have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the date that Dealership Plaintiffs and Sumitomo have executed this Agreement, Dealership Plaintiffs and Sumitomo shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraphs 24(h) or 45 of this Agreement.

20.    Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents and discussions associated with them (including Cooperation Materials produced pursuant to Paragraphs 34-38), shall be deemed or construed to be an admission by Sumitomo, or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Sumitomo, or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the MDL Litigation, and evidence thereof shall not be discoverable or used in any way, whether in the MDL Litigation, or any other arbitration, action or proceeding whatsoever, against Sumitomo.  Nothing in this Paragraph shall prevent Dealership Plaintiffs from using and/or introducing into evidence Cooperation Materials produced pursuant to Paragraphs 34-38, subject to the limitations in those paragraphs, against any other defendants in the MDL Litigation, to establish any of the above, subject to the terms and conditions set forth in the Protective Orders in the Actions, except as stated in Paragraph 38(f).  Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by Sumitomo, shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action, arbitration, or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

C.    Release, Discharge, and Covenant Not to Sue.

21.    In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final, as set out in Paragraph 19 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 23 of this Agreement, into the Settlement Funds, and for other valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands,

10

actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Funds, whether directly, representatively, derivatively or in any other capacity) under any federal, state or local law of any jurisdiction in the United States, that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any conduct alleged in the Complaints or any act or omission of the Releasees (or any of them), concerning Automotive Wire Harness Systems or HCPs, including but not limited to any conduct and causes of action alleged or asserted or that could have been alleged or asserted, in any class action or other complaints filed in the Actions (the "Released Claims"), provided however, that nothing herein shall release: (1) any claims made by direct purchasers of Automotive Wire Harness Systems and/or HCPs as to such direct purchasers; (2) any claims made by end-payors that are indirect purchasers of Automotive Wire Harness Systems and/or HCPs; (3) any claims made by any state, state agency, or instrumentality or political subdivision of a state as to government purchases and/or penalties;   (4) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to Automotive Wire Harness Systems and/or HCPs; (5) claims concerning any automotive part other than Automotive Wire Harness Systems or HCPs; (6) claims under laws other than those of the United States relating to purchases of Automotive Wire Harness Systems and/or HCPs made outside of the United States; and (7) claims for damages under the state or local laws of any

11

jurisdiction other than an Indirect Purchaser State. Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee as to, in whole or in part, any of the Released Claims.

22. In addition to the provisions of Paragraph 21 of this Agreement, Releasors hereby expressly waive and release, upon this Agreement becoming final, as set out in Paragraph 19 of this Agreement, any and all provisions, rights, and benefits, as to their claims concerning Automotive Wire Harness Systems and HCPs conferred by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 21 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that Sumitomo and Dealership Plaintiffs have agreed to release pursuant to Paragraph 21, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

12

D.     Settlement Amount.

23.     Subject to the provisions hereof, and in full, complete and final settlement of the Actions as provided herein, Defendant SEI, on behalf of Sumitomo, shall pay the Settlement Amount of US $12,000,000 (the "Settlement Amount"). The Settlement Amount shall be paid into escrow accounts in United States Dollars to be administered in accordance with the provisions of Paragraph 24 of this Agreement (the "Escrow Accounts") within thirty (30) days following entry of an order preliminarily approving this Agreement.

24.     Escrow Accounts.

(a)     The Escrow Accounts will be established at Huntington Bank N.A. with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Settlement Class Counsel and Sumitomo, such escrow to be administered by the Escrow Agent under the Court's continuing supervision and control.

(b)     The Escrow Agent shall cause the funds deposited in the Escrow Accounts to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.

(c)     All funds held in the Escrow Accounts shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

(d)     Dealership Plaintiffs and Sumitomo agree to treat the Settlement Funds as being at all times qualified settlement funds within the meaning of Treas. Reg. § 1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 24, including the relation-back election (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(e)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the administrator shall be Settlement Class Counsel. Settlement Class Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Funds (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(1)). Such returns (as well as the election described in Paragraph 24(d)) shall be consistent with Paragraph 24(d) and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on the income earned by the Settlement Funds shall be paid out of the Settlement Funds as provided in Paragraph 24(f) hereof.

(f)     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Funds, including any taxes or tax detriments that may be imposed upon Sumitomo or any other Releasee with respect to any income earned by the Settlement Funds for any period during which the Settlement Funds do not qualify as qualified settlement funds for federal or state income tax purposes ("Taxes");

14

and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 24(d) through 24(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 24(e) ("Tax Expenses")), shall be paid out of the Settlement Funds.

      (g)      Neither Sumitomo nor any other Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Funds and shall be timely paid by the Escrow Agent out of the Settlement Funds without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). Sumitomo shall not be responsible or have any liability therefor. Dealership Plaintiffs and Sumitomo agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 24(d) through 24(f).

      (h)      If this Agreement does not receive final Court approval, including final approval of the Settlement Classes as defined in Paragraph 11, or if the Actions are not certified as class actions for settlement purposes, then all amounts paid by Sumitomo into the Settlement Funds (other than costs expended or incurred in accordance with Paragraph 27), shall be returned to Sumitomo from the Escrow Account by the Escrow Agent along with any

interest accrued thereon within thirty (30) calendar days of the Court's denial of final approval of the Agreement and/or Settlement Classes.

25.    Injunctive Relief.

Subject to the provisions hereof, and in full, complete and final settlements of the Actions as provided herein, Sumitomo further agrees that it is enjoined for a period of 24 months from the date of the entry of final judgment not to engage in conduct that constitutes a per se violation of Section 1 of the Sherman Act (whether characterized as price fixing, market allocation, bid rigging, or otherwise) with respect to the sale of any Automotive Wire Harness System or HCP.

26.    Exclusions.

Within ten (10) business days after the Opt-Out Deadline, Settlement Class Counsel will cause copies of timely requests for exclusion from the Settlement Classes to be provided to counsel for Sumitomo. With respect to any potential Settlement Class Member who requests exclusion from the Settlement Classes, Sumitomo reserves all of its legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded Settlement Class Member is an indirect purchaser of any allegedly price-fixed Automotive Wire Harness Systems or HCPs and/or has standing to bring any claim.

27.    Payment of Expenses.

(a)    Sumitomo agrees to permit use of a portion of the Settlement Funds towards notice to the Settlement Classes and the costs of administration of the Settlement Funds. The notice and administration expenses are not recoverable if this settlement does not become final or is terminated to the extent such funds have actually been expended or incurred for notice and administration costs. Other than as set forth in this Paragraph 27 and Paragraph 38, Sumitomo shall not be liable for any of the costs or expenses of the litigation

16

of the Actions, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court or Special Master, appeals, trials or the negotiation of other settlements, or for class administration and costs.

        (b)    In order to mitigate the costs of notice and administration, the Dealership Plaintiffs shall use their best efforts, if practicable, to disseminate notice with any other settlements reached with Sumitomo or other defendants in the MDL Litigation and to apportion the costs of notice and administration on a pro rata basis across the applicable settlements.

E.    <u>The Settlement Funds</u>.

28.    Releasors' sole recourse for settlement and satisfaction against the Releasees of all Released Claims is against the Settlement Funds, and Releasors shall have no other recovery against Sumitomo or any other Releasee.

29.    After this Agreement becomes final within the meaning of Paragraph 19, the Settlement Funds shall be distributed in accordance with a plan to be submitted to the Court at the appropriate time by Settlement Class Counsel, subject to approval by the Court. In no event shall any Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration except as expressly otherwise provided in Paragraph 27 of this Agreement.

30.    Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Funds for all expenses and costs, as provided by Court Order. Sumitomo and the other Releasees shall not be liable for any costs, fees, or expenses of any of Dealership Plaintiffs or the Settlement Classes' respective attorneys, experts, advisors,

17

agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

31.     Settlement Class Counsel's Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives.

(a)     Settlement Class Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Funds; plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Actions and incentive awards, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). Settlement Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred and reasonable incentive awards, but in no event shall Sumitomo or any other Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)     Subject to Court approval, Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation expenses and incentive awards. Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Funds upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund with interest, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is

18

reduced or reversed, or in the event the Agreement is rescinded or terminated pursuant to Paragraph 24(h) or Paragraph 45.

      (c)    The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, and incentive awards for class representatives to be paid out of the Settlement Funds are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

      (d)    Neither Sumitomo nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Dealership Plaintiffs of any Fee and Expense Award in the Actions.

      (e)    Neither Sumitomo nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, Dealership Plaintiffs and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Actions.

F.    Cooperation.

      32.    Sumitomo has provided extensive cooperation, in the form of attorney proffers and witness interviews, to Dealership Plaintiffs throughout the Actions.

      33.    In return for the release and discharge provided herein, Sumitomo agrees to pay the Settlement Amount and be bound by the injunction described in Paragraph 25, and further

agrees to use its best efforts to continue to provide satisfactory and timely Cooperation, as set forth specifically in Paragraphs 34-38 below, until the later of the entry of the final judgment or judgments with respect to all of the remaining defendants in the Dealership Plaintiff Automotive Wire Harness Systems and HCP cases or dismissal with prejudice of those defendants and when such judgments or dismissals become "final" within the meaning of Paragraph 19. Cooperation will take place consistent with the timing set forth specifically in Paragraphs 34-38 below, and in a manner that is in compliance with Sumitomo's obligations to any Government Entities (defined as the United States Department of Justice, the Japanese Fair Trade Commission, the European Commission, or any other government entity). All Cooperation shall be coordinated, to the extent reasonably practicable, with the settlement class counsel for the End-Payor Plaintiffs ("End-Payor Settlement Class Counsel") in the actions captioned Master File No. 12-md-02311, Case No. 12-cv-00103 and Case No. 12-cv-00403 so as to avoid all unnecessary duplication and expense.

34.    Within five (5) business days after Preliminary Approval, counsel for Sumitomo shall provide Settlement Class Counsel with the identity of all current and former employees, directors and officers of Sumitomo who: (1) were interviewed by any Government Entities in connection with alleged price-fixing, bid rigging, market allocation, and/or other unlawful anticompetitive activity concerning the sale of Automotive Wire Harness Systems or HCPs in the United States or for vehicles that were sold in the United States; and/or (2) appeared before the grand jury in the DOJ's investigation into alleged antitrust violations with respect to Automotive Wire Harness Systems or HCPs. Neither Sumitomo nor Counsel for Sumitomo shall be required to disclose to Settlement Class Counsel the specific Government Entities to which each such current or former employee, director or officer of Sumitomo appeared before.

20

35.     Except as set forth therein, and to the extent not already produced, Sumitomo will use its best efforts to substantially complete the production of the following Documents in Sumitomo's possession, custody or control, set forth in subparagraphs (a)-(g) no later than February 1, 2016.  Sumitomo is under no obligation to produce documents protected by the work-product doctrine, the attorney-client privilege or any other privilege or doctrine protecting disclosure or documents where production is prohibited by the relevant antitrust agencies, the law of relevant foreign jurisdictions, court and/or protective order:

(a)     Documents relevant to the claims alleged in the Complaints or that relate to or concern an actual or potential communication, meeting, or agreement between Sumitomo and one or more of its competitors, regarding Automotive Wire Harness Systems and/or HCPs to the extent that such Documents exist in the files of the 69 custodians listed at Appendix A and are dated between January 1, 1998 and October 31, 2011, or to the extent such documents have been identified in any proffers by Sumitomo witnesses.

(b)     All documents produced to Government Entities pursuant to a formal request for documents in connection with investigations of price-fixing, bid rigging, and market allocation of Automotive Wire Harness Systems and HCPs, and all documents produced to the DOJ pursuant to a formal or informal request for documents, and including, for both categories, all English translations of such documents provided to those Government Entities, as of the Execution Date of this Agreement.  Sumitomo shall not be required to disclose to Settlement Class Counsel the specific Government Entities to which such documents were provided.

(c)     Documents concerning Sumitomo's determinations of its prices for Automotive Wire Harness Systems and HCPs that it sells, including pricing policies,

formulas and guidelines, including Documents concerning the relationship between prices charged or submitted to different OEMs or to the same OEM for different models to the extent that such Documents exist in the files of the 69 custodians listed at Appendix A and are dated between January 1, 1998 and October 31, 2011, or to the extent such documents have been identified in any proffers by Sumitomo witnesses.

(d) Documents concerning Automotive Wire Harness Systems or HCPs that were collected and reviewed in connection with Sumitomo's internal investigation but were not provided to or seized by Government Entities and that are relevant to the claims and allegations in the Complaints to the extent that such Documents exist in the files of the 69 custodians listed at Appendix A and are dated between January 1, 1998 and October 31, 2011, or to the extent such documents have been identified in any proffers by Sumitomo witnesses.

(e) Documents showing how employees were trained or instructed to bid and set prices submitted to purchasers or potential purchasers, for products comprising Automotive Wire Harness Systems and/or HCPs, in RFQs, or any other procurement process, including documents stating the lowest bid or price employees were authorized to submit, how to determine the lowest allowable bid or price, and when and how to increase or decrease a proposed bid or price to the extent that such Documents exist in the files of the 69 custodians listed at Appendix A and are dated between January 1, 1998 and October 31, 2011, or to the extent such documents have been identified in any proffers by Sumitomo witnesses.

(f) Transactional data concerning sales of Automotive Wire Harness Systems to Original Equipment Manufacturers ("OEMs") or other purchasers of Automotive

22

Wire Harness Systems and HCPs ("Transactional Data") from January 1, 1997 to two years from the Execution Date of this Agreement, including the following information (to the extent that it exists): (1) the date for each sale; (2) the final price of each sale; (3) the purchaser to whom each sale was made; (4) the model, model year(s) and brand of car for which each sale was made, as well as the country of sale of said cars; (5) the total amount of Automotive Wire Harness Systems sold in each sale; (6) the location where each sale was made; (7) the Sumitomo entity which made each sale; (8) value engineering and/or other price adjustment made to the Automotive Wire Harness Systems sold in each sale; (9) any ancillary costs associated with each sale such as tooling costs; (10) Sumitomo's profits, losses and margins on the products comprising Automotive Wire Harness Systems and other reasonably available financial information, *e.g,* balance sheets and ledger data; (11) data showing Sumitomo's costs to produce the products comprising Automotive Wire Harness Systems; and (12) product description and identification information (including codes, identifiers, and/or part numbers). To the extent Sumitomo has not recorded or maintained electronic transaction data for any period between January 1, 1997 and two years after the Execution Date, then Sumitomo will use reasonable efforts to produce records of those sales transactions not recorded or maintained electronically in the existing electronic sales transaction databases. Additionally, Sumitomo will provide to Dealership Plaintiffs any later-generated electronic transactional data that is provided to plaintiffs in any other case involving Automotive Wire Harness Systems and HCP claims in the Automotive Parts Litigation, 12-md-02311. Notwithstanding any other provision in this Agreement, Settlement Class Counsel agrees that it shall maintain all data that Sumitomo will produce as "Highly Confidential," as said designation is described in the Protective Order in the Action, subject

to any challenge that any party may make subject to the Protective Order and any orders of the Court

           (g)     Documents concerning bids submitted to OEMs or other purchasers of Automotive Wire Harness Systems and/or HCPs related to the provision of Automotive Wire Harness Systems and/or HCPs, including the following information (1) the date for each bid; (2) the price submitted in each bid; (3) bids formulated but not submitted due to agreements or understandings with co-conspirators; (4) the purchaser to whom each bid was submitted; (5) the model, model year(s) and brand of car for which each bid was submitted; (6) the location where each bid was submitted; (7) the Sumitomo entity which submitted each bid; (8) the identity of any other bids submitted by competitors, including each winning bid; (9) the specifications for each bid; and (10) adjustments made to each bid as it was being formulated, to the extent that such Documents exist in the files of the 69 custodians listed at Appendix A and are dated between January 1, 1998 and October 31, 2011.  Sumitomo also agrees to produce the categories of Documents described in this paragraph for those car models that Sumitomo has identified in their responses to the Direct Purchaser Plaintiffs' Interrogatory No. 8, to the extent that such Documents exist in the files of the 69 custodians listed at Appendix A and are dated between January 1, 1998 and December 31, 2013.

      36.     For all Documents withheld from production pursuant to (1) the attorney-client privilege; (2) the work-product doctrine; (3) a protective order, or (4) any other applicable privilege or doctrine protecting documents from disclosure, Sumitomo shall provide a privilege log, to the extent it already exists or comes into existence as a result of the MDL Litigation or otherwise, describing such Documents in sufficient detail as to explain the nature of the privilege asserted or the basis of any other law or rule protecting such Documents.  No Document shall be

24

withheld under a claim of privilege if it was intentionally produced to any Government Entity. If any Document protected by the attorney-client privilege, the work-product protection or any other privilege is accidentally or inadvertently produced to Settlement Class Counsel, upon notice by Sumitomo of such inadvertent production, the Document shall promptly be destroyed and/or returned to Sumitomo, the Document shall not be used by Settlement Class Counsel for any purpose, and its production shall in no way be construed to have waived any privilege or protection attached to such Document. This Agreement, together with the Protective Order in each of the Actions, brings any inadvertent production by Sumitomo within the protections of Federal Rule of Evidence 502(d), and Settlement Class Counsel will not argue that production to any person or entity made at any time suggests otherwise. Any dispute regarding any claim of privilege shall be resolved by motion to the Court under Paragraph 52 of this Agreement.

37. In the event that Sumitomo produces Documents or provides declarations or written responses to discovery to any opposing party in the Actions or in the other Automotive Wire Harness Systems and HCP cases (a "Relevant Production"), Sumitomo shall produce all such Documents, declarations or written discovery responses to Settlement Class Counsel contemporaneously with making the Relevant Production to the extent such Documents, declarations or written discovery responses have not previously been produced by Sumitomo to Settlement Class Counsel. This Agreement does not restrict Settlement Class Counsel from attending and/or participating in any depositions in the Actions or in the other Automotive Wire Harness Systems and HCPs cases. Sumitomo will not object to Settlement Class Counsel and Automobile Dealership Settlement Class Counsel attending and/or participating in depositions of Sumitomo witnesses to the extent Settlement Class Counsel and End-Payor Settlement Class

Counsel's participation does not expand the time allotted for the deposition pursuant to applicable stipulations or orders in the MDL Litigation.

38.     Additionally, Sumitomo shall use its best efforts to cooperate with Settlement Class Counsel as set forth in Paragraphs 38(a)-(f) below. Any attorney proffers, witness interviews, or depositions provided pursuant to the below obligations shall be coordinated with, and occur at the same time as, the attorney proffers, witness interviews, and depositions to be provided in contemporaneous settlements of indirect purchaser claims entered into by Sumitomo in the MDL Litigation and any related obligations that may arise from any other settlement.

(a)     Sumitomo's counsel has already provided attorney proffers. Sumitomo's counsel agrees to make themselves available for reasonable follow-up questions from and coordinated between Settlement Class Counsel and End-Payor Settlement Class Counsel. Notwithstanding any other provision in this Agreement, Settlement Class Counsel shall maintain all statements made by Sumitomo's counsel as "Highly Confidential," as said designation is described in the Protective Order in the Action, and shall not use the information so received for any purpose other than the prosecution of the Automotive Wire Harness Systems claims in Automotive Parts Antitrust Litigation, 12-md-02311. The parties and their counsel further agree that any statements made by Sumitomo's counsel in connection with and/or as part of this settlement, including the attorney's proffer(s) referred shall not be disclosed to any other party and shall be governed by Federal Rule of Evidence 408 and, otherwise, shall not be deemed admissible into evidence or to be subject to further discovery. Notwithstanding anything herein, Settlement Class Counsel may use information contained in such statements in the prosecution of the Automotive Wire Harness Systems claims in the Automotive Parts Antitrust Litigation, 12-md-02311, and rely on such

26

2:12-cv-00402-MOB-MKM Doc # 172-2 Filed 09/18/15 Pg 28 of 39 Pg ID 4083

information to certify that, to the best of Settlement Class Counsel's knowledge, information and belief, such information has evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

(b)     During the course of the Actions, Sumitomo has permitted Settlement Class Counsel and the End-Payor Settlement Class Counsel to interview eight (8) persons who possess knowledge of facts and information that would reasonably assist Dealership Plaintiffs in the prosecution of the Actions. Sumitomo shall make four (4) additional persons whom Settlement Class Counsel reasonably and in good faith believe possess knowledge of facts or information that would reasonably assist Dealership Plaintiffs in the prosecution of the MDL Litigation, and who may consist of current or former directors, officers, and/or employees of Sumitomo, available for interviews. The eight persons who have been interviewed and the additional four persons who are interviewed are herein referred to as "Witnesses." Upon reasonable notice by Settlement Class Counsel, Sumitomo shall use its best efforts to make available by telephone the persons who have been or are in the future interviewed to answer follow-up questions for a period not to exceed two (2) hours. Unless otherwise agreed, the interview will take place in the country of the witness's residence at a mutually agreeable location.

(c)     Upon reasonable joint notice by Settlement Class Counsel and End-Payor Settlement Class Counsel, Sumitomo shall use its best efforts, at Settlement Class Counsel and End-Payor Settlement Class Counsel's joint request, to make appear for deposition (i) a total of up to five (5) persons who Settlement Class Counsel and End-Payor Settlement Class Counsel together select from among the Witnesses, who will have knowledge of relevant facts and will be fully prepared to testify truthfully, and to provide (ii)

27

a total of up to five (5) declarations/affidavits from among the same Witnesses. Each deposition shall be conducted at a mutually agreed-upon location, and shall each be limited to a total of seven (7) hours. To the extent that the person to be deposed requests an interpreter, the deposition shall be limited to a total of twelve (12) hours, over two days. Written notice by Settlement Class Counsel and End-Payor Settlement Class Counsel to Sumitomo's counsel shall constitute sufficient service of notice for such depositions. If Settlement Class Counsel and End-Payor Settlement Class Counsel request declarations/affidavits, such affidavits and declarations will be provided in English.

(d) Upon reasonable notice, Sumitomo shall make its best efforts to provide, for trial testimony, if necessary, a reasonable number of Sumitomo persons from among the Witnesses or other persons who have been interviewed or deposed in the MDL Litigation, which may consist of current or former directors, officers, and/or employees of Sumitomo whom Settlement Class Counsel, in consultation with counsel for Sumitomo, reasonably and in good faith believe possess knowledge of facts or information that would reasonably assist Dealership Plaintiffs as a trial witness in the Actions, and who will be prepared to testify truthfully. Settlement Class Counsel shall reimburse Sumitomo for reasonable travel expenses incurred by any such person in connection with their trial testimony, but in no event shall Settlement Class Counsel be responsible for reimbursing such persons for time or services rendered.

(e) In addition to its Cooperation obligations set forth herein, Sumitomo agrees to produce through affidavit(s) or declaration(s) and/or at trial, in Settlement Class Counsel's discretion, representatives qualified to authenticate, establish as business records, or otherwise establish any other necessary foundation for admission into evidence of any of

28

Sumitomo's Documents and Transactional Data produced or to be produced, and to the extent possible, any Documents produced by Defendants or third-parties in the Actions. Settlement Class Counsel agree to use their best efforts to obtain stipulations that would avoid the need to call Sumitomo witnesses at trial for the purpose of obtaining such evidentiary foundations.

(f)     Dealership Plaintiffs and Settlement Class Counsel agree they will not use the information provided by Sumitomo or the other Releasees or their representatives under this Agreement for any purpose other than the prosecution of claims in the MDL Litigation, and will use it in the Actions and any other case in the MDL Litigation consistent with the Protective Orders, and will not use it beyond what is reasonably necessary for the prosecution of claims in the MDL Litigation or as otherwise required by law. All Documents and other information provided pursuant to this Agreement will be deemed "Highly Confidential", as said designation is described in the Protective Orders in the Actions, subject to the Protective Orders entered in the Actions as if they had been produced in response to discovery requests and so designated.

39.     To the extent that Dealership Plaintiffs learn new information through Sumitomo's Cooperation pursuant to Paragraphs 35-38 above that Dealership Plaintiffs believe in good faith requires additional interviews, depositions, documents or data, nothing in this Agreement shall prevent Dealership Plaintiffs from requesting such additional reasonable Cooperation, and Sumitomo agrees not to unreasonably deny such additional reasonable Cooperation.

40.     Sumitomo's obligations to provide Cooperation shall not be affected by the releases set forth in this Settlement Agreement.     Unless this Agreement is rescinded,

disapproved, or otherwise fails to take effect, Sumitomo's obligations to provide Cooperation under this Agreement shall continue only until otherwise ordered by the Court, the later of the entry of the final judgment or judgments with respect to all of the remaining defendants in the Dealership Plaintiff Automotive Wire Harness Systems and HCP cases or dismissal with prejudice of those defendants and when such judgments or dismissals become "final" within the meaning of Paragraph 19.

  41. In the event that this Agreement fails to receive final approval by the Court as contemplated in Paragraphs 15-19 hereof, including final approval of the Settlement Classes as defined in Paragraph 11, or in the event that it is terminated by either party under any provision herein, the parties agree that neither Dealership Plaintiffs nor Settlement Class Counsel shall be permitted to introduce into evidence against Sumitomo, at any hearing or trial, or in support of any motion, opposition or other pleading in the Actions or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of the Actions, any deposition testimony or any documents provided by Sumitomo and/or the other Releasees, their counsel, or any individual made available by Sumitomo pursuant to Cooperation (as opposed to from any other source or pursuant to a court order). This limitation shall not apply to any discovery of Sumitomo which Settlement Class Counsel participate in as part of the MDL Litigation. Notwithstanding anything contained herein, Dealership Plaintiffs and the Settlement Classes are not relinquishing any rights to pursue discovery against Sumitomo in the event that this Agreement fails to receive final approval by the Court as contemplated in Paragraphs 15-19 hereof, including final approval of the Settlement Classes as defined in Paragraph 11, or in the event that it is terminated by either party under any provision herein.

42.     Sumitomo need not respond to discovery requests made pursuant to the Federal Rules of Civil Procedure from Dealership Plaintiffs, meet and confer or otherwise negotiate with Dealership Plaintiffs regarding discovery requests previously served in the Actions or otherwise participate in the Actions during the pendency of the Agreement.  Other than to enforce the terms of this Agreement, neither Sumitomo nor Dealership Plaintiffs shall file motions against the other, in the Actions, during the pendency of the Agreement.

43.     Sumitomo, Dealership Plaintiffs, and Settlement Class Counsel agree not to disclose publicly or to any other person the terms of this Agreement until this Agreement is fully executed by all parties.

44.     If Settlement Class Counsel believe that Sumitomo or any current or former employee, officer or director of Sumitomo has failed to cooperate under the terms of this Agreement, Settlement Class Counsel may seek an Order from the Court compelling such cooperation.  Nothing in this provision shall limit in any way Sumitomo's ability to defend the level of Cooperation it has provided or to defend its compliance with the terms of the Cooperation provisions in this Agreement.

G.     Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.

45.     If the Court refuses to approve this Agreement or any part hereof, including if the Court does not certify the Settlement Classes in accordance with the specific Settlement Class definitions set forth in this Agreement, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgments provided for in Paragraph 19 of this Agreement, or if the Court enters the final judgments and appellate review is sought, and on such review, such final judgments are not affirmed in its entirety, then Sumitomo and Dealership Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms of

31

Paragraph 56. A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the Court from the Settlement Funds shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

46.     In the event that this Agreement does not become final as set forth in Paragraph 19, or this Agreement otherwise is terminated pursuant to Paragraph 45, then this Agreement shall be of no force or effect and any and all parts of the Settlement Funds caused to be deposited in the Escrow Accounts (including interest earned thereon) shall be returned forthwith to Sumitomo less only disbursements made in accordance with Paragraph 27 of this Agreement. Sumitomo expressly reserves all rights and defenses if this Agreement does not become final.

47.     Further, and in any event, Dealership Plaintiffs and Sumitomo agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing whatsoever by Sumitomo, or the other Releasees to be used against Sumitomo, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the MDL Litigation, to be used against Sumitomo, and evidence thereof shall not be discoverable or used in any way, in the MDL Litigation, against Sumitomo. Nothing in this Paragraph shall prevent Dealership Plaintiffs from using Cooperation Materials produced by Sumitomo against any other defendants in any actions to establish any of the above.

48.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement as well as Cooperation by Sumitomo.

32

49.     The parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in Paragraphs 15-19 hereof, appropriate notice 1) of the settlement; and 2) of a hearing at which the Court will consider the approval of this Agreement, will be given to the Settlement Classes.

H.      Miscellaneous.

50.     Sumitomo shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

51.     This Agreement does not settle or compromise any claim by Dealership Plaintiffs or any Settlement Class Member asserted in the Complaints or, if amended, any subsequent complaint, against any Defendant or alleged co-conspirator other than Sumitomo and the other Releasees.  All rights against such other Defendants or alleged co-conspirators are specifically reserved by Dealership Plaintiffs and the Settlement Classes.  All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than Sumitomo and the other Releasees, for sales made by Sumitomo and Sumitomo's alleged illegal conduct are specifically reserved by Dealership Plaintiffs and Settlement Class Members.  Sumitomo's sales to the class and its alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Actions as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Actions or other persons or entities other than Sumitomo and the other Releasees.  Sumitomo shall not be responsible for any payment to Dealership Plaintiffs other than the amount specifically agreed to in Paragraph 23 of this Agreement.

52.     The United States District Court for the Eastern District of Michigan shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating

to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Dealership Plaintiffs and Sumitomo, including challenges to the reasonableness of any party's actions. This Agreement shall be governed by and interpreted according to the substantive laws of the state of Michigan without regard to its choice of law or conflict of laws principles. Sumitomo will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.

53.     This Agreement constitutes the entire, complete and integrated agreement among Dealership Plaintiffs and Sumitomo pertaining to the settlement of the Actions against Sumitomo, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations and discussions, either oral or written, between Dealership Plaintiffs and Sumitomo in connection herewith. This Agreement may not be modified or amended except in writing executed by Dealership Plaintiffs and Sumitomo, and approved by the Court.

54.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Dealership Plaintiffs and Sumitomo. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Dealership Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than Sumitomo entities which are parties hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

55.     This Agreement may be executed in counterparts by Dealership Plaintiffs and Sumitomo, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

34

56.     Neither Dealership Plaintiffs nor Sumitomo shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

57.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

58.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement subject to Court approval.

59.     This Agreement shall become effective upon approval by the Board of Directors of SEI, and Sumitomo shall promptly notify Dealership Plaintiffs upon receipt of such approval.


Dated: September 15, 2015

Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
Yifei Li
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com
joel@cuneolaw.com

35

vicky@cuneolaw.com
evelyn@cuneolaw.com

*Shawn M. Raiter, by Don Barrett,*
*with permission*

Shawn M. Raiter
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628
dbarrett@barrettlawgroup.com
HIGHLY CONFIDENTIAL-FILED UNDER SEAL
21
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

*Interim Co-Lead Class Counsel and Settlement Class Counsel*

September 15, 2015

Marguerite M. Sullivan
**LATHAM & WATKINS LLP**
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel.: 202-637-2200
Fax: 202-637-2201

Daniel M. Wall
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel.: 415-395-0600
Fax: 415-395-8095

William H. Horton (P31567)
**GIARMARCO, MULLINS & HORTON, P.C.**
101 West Big Beaver Road, Tenth Floor
Troy, MI 48084-5280
Tel.: 248-457-7060

*Attorneys for Defendants Sumitomo Electric Industries, Ltd.; Sumitomo Wiring Systems, Ltd.; Sumitomo Electric Wiring Systems, Inc., K&S Wiring Systems, Inc., and Sumitomo Wiring Systems (U.S.A.) Inc.*

# APPENDIX A

Yoshitaka Ando
Tokiji Aoyama
Masamitsu Chishima
Lyndsey (Rodgers) Coschino
Yoshio Ebihara
Eric Fidh
Takashi Fukuoka
Koichi Hamaguchi
Toshihiko Hojo
Takashi Horiuchi
Toyoaki Hosokawa
Hitoshi Inoue
Osamu Inoue
Hiroki Ishida
Yuichi Ishiguro
Shoji Ishii
Masataka Iwakawa
Maria Jhun
Takashi Kakihara
Ryo Kakuma
Yoshikazu Kato
Hiroyuki Katsuno
Tomofumi Katsuyama
Makoto Kawakita
Tatsuya Kawakita
Takao Kawamura
Hiroyuki Kimura
Kazuyuki Kondo
Toru Kuwahara
William Lefebvre
Tadashi Matsumoto
Toshihiro Minami
Ryo Mizushima
Tomoaki Nagano
Kazuyoshi Nakai

Masaharu Nakamura
Soichiro Namba
Tetsuo Nishihara
Arata Noheji
Yoshiyuki Ogata
Yoichiro Oka
Isao Okada
Motoi Okishio
Naoya Okuda
Shinsuke Okuda
Taiji Okuda
Masakazu Ootsu
Alex Shen
Naoki Shida
Hideyuki Shigi
Atsushi Shimizu
Kazushi Shimizu
Andy Sleeman
Masahiro Suda
Seijiro Suenobu
Yusuke Tabata
Yoichi Takeda
Takeshi Tanaka
Michihiko Tani
Yuzo Tokumaru
Kunihiro Toya
Hideaki Uemura
Takashi Ueno
Yoshikazu Uno
Akifumi Urata
Kenichi Urushibata
Scott Wakefield
Han Xinghui/Seiki Kan
Jun Yamada